STATE OF MAINE

KENNEBEC, ss.

EDWIN S. BAILEY,

     Petitioner

    v.

STATE OF MAINE,

     Respondent

SUPERIOR COURT
CRIMINAL ACTION
DOCKET NO. CR-01-036

DONALD L. GARBRECHT
LAW LIBRARY

AUG 11 2003

ORDER ON POST
CONVICTION REVIEW

This matter is before the court upon petitioner's Petition for Post-Conviction Review and respondent's motion to dismiss Grounds Two and Three of the Petition for Post-Conviction Review. On January 11, 2000, a criminal complaint was issued by the Clerk of the District Court charging Edwin P. Bailey in count I with assault, class D, 17-A M.R.S.A. § 207, and in count II, threatening display of or carrying a concealed weapon, class D, 25 M.R.S.A. § 2001. Both counts relate to an incident on or about November 6, 1999, involving Beth Bailey, then wife of the petitioner.[1] On January 12, 2000, the petitioner was found guilty on count I of the complaint upon his plea. The sentence imposed was imprisonment in the Kennebec County Jail for a term of 364 days with all of the sentence suspended and the defendant placed on a probation for a term of one year and count II of the complaint was disposed of. The petitioner's conditions of probation, in addition to the mandatory requirements, required the petitioner to undergo anger management counseling/treatment, have no contact of any kind with Beth Bailey, obey all protective orders in effect and not to go to the residence of Beth Bailey, Lakeview Drive, China. The conditions of probation form, executed by the

---

[1] Nothing in the complaint identifies Beth Bailey as being the wife of the petitioner or any other indication of a domestic relationship between the victim and the petitioner.

petitioner on January 12, 2000, also contains item no. 14, "You are prohibited from owning, possessing or using firearms or dangerous weapons if this section is checked or if you have been convicted of a murder, or a class A, B or C crime, or any other matter involving the use of a firearm."

On January 10, 2001, the petitioner filed a signed Petition for Post-Conviction Review seeking to set aside his plea of guilty to the assault and returning the matter to the trial list. The first ground for relief is entitled, "Denial of Due Process of Law – Misleading Advice Given by State." He specifically charges the Assistant District Attorney (ADA) with advising him that conviction of the offense would not prohibit him from possessing firearms. His second ground is entitled, "Improper Arraignment – Failure to Comply with M.R. Crim. P. 5." On this ground, he charges that the court did not inform him of the substance of the charge against him in that the court did not inform him that the case was considered a domestic assault nor did the court advise him that this conviction would prohibit him from possessing firearms. Finally, the petitioner alleges that his plea was not knowingly made, without knowing that the case was considered a domestic assault which would prohibit him from possessing firearms and his lack of knowledge was not the result of any failure, act or neglect on his part.

The respondent has moved to dismiss Grounds Two and Three of the Petition for Post-Conviction Review for failure to state a claim for which post-conviction relief is warranted. The State alleges that, "Nothing in Maine law requires the court to tell a defendant that the case is a 'domestic assault'. In fact, there is no element of assault, pursuant to 17-A M.R.S.A. § 207, which requires some proof that the victim was a domestic partner." In addition, the State argues that the court is under no requirement to advise a defendant of the collateral consequences of his plea particularly when that collateral consequence involves federal law. As to Ground Three, the respondent

2

admits that unless the petitioner can prove he was misinformed by someone, the ground must fail and it further argues that the prosecutor is under no obligation to delve into the defendant's personal history, act as the defendant's attorney and tell him of all consequences of the plea. Finally, the State argues that the petitioner must "show that the challenged criminal judgment of the sentence is unlawful or unlawfully imposed ..." 15 M.R.S.A. § 2125. The State argues the petitioner is unable to establish that conclusion even if one assumes the allegations in Grounds Two and Three are to be true.

At his arraignment before the District Court on January 12, 2000, the petitioner was advised that he had a right to have a lawyer, "including a free lawyer, if you want one." Transcript (Tr.), p. 2. When asked if he understood that right, the transcript indicates, "(inaudible response)." The court went on to advise petitioner that he had a right to remain silent, a right not to testify at trial and that any volunteered information could be used against him. Again, upon inquiry whether he understood, the transcript reveals, "(inaudible response)." Tr., p. 2. Further, the court advised the plaintiff that he was considered innocent until and unless the State proves each element beyond a reasonable doubt, he had a right to have a trial, at the trial he or his attorney could confront the State's witnesses and ask them questions, he could present evidence, the trial could be held in District Court or a jury in Superior Court. To this, when inquired whether he understood the rights, the transcript reveals the petitioner said "yes." Tr., p. 3. The court went on to explain that petitioner was charged with two counts of class D offenses with maximum penalties of 364 days imprisonment and a maximum fine of $2,000. The ADA then advised the court that her office would be dismissing count II at which time the court advised the petitioner he was facing 364 days, $2,000 fine, and the charge indicates that on November 6, 1999, in China, "You intentionally, knowingly, or

3

recklessly caused bodily injury or offensive physical contact to Beth Bailey, and they charged you with assault. Do you understand this charge?" To which the petitioner, "yes." Tr., p. 3. The court then asked the petitioner how he wished to plead and his response was "guilty." The court then inquired of the plea agreement which was presented by the ADA.

The court then asked petitioner whether he had anything to say and the transcript reveals, "(inaudible response)." Tr., p. 4. The court then asked the ADA whether the case involved bodily injury and was advised it was offensive contact. The ADA further advised the court that the petitioner did not have a criminal record or a prior assault charge. The court then imposed a sentence of 364 days in the Kennebec County Jail, all suspended, with one-year probation, and recited the special conditions that he undergo anger management counseling, have no contact with Beth Bailey or be in the vicinity of her residence and to obey all protective orders that are in effect. The possession of firearms condition was not mentioned during the court proceeding nor was item no. 14 of the conditions of probation "checked."

Ground Two of the Petition complains that the court conducted an improper arraignment by failing to comply with the Maine Rules of Criminal Procedure. Most specifically, petitioner complains that the court did not advise him that he was being charged with a "domestic" assault or that his conviction would prohibit him from possessing firearms. In accordance with the provisions of M.R. Crim. P. 5C(b), when the petitioner was brought before the District Court, it was the requirement of the District Court Judge to:

> (1)     inform the person of the substance of the charges against the person;
> (2)     inform the person of the person's right to retain counsel, and to request the assignment of counsel, and that the person may be allowed a reasonable time and opportunity to consult counsel before entering a plea;

4

(3)    inform the person that the person is not required to make a statement and that any statement made by the person may be used against the person; and

(4)    admit the person to bail as provided by law.

In addition, M.R. Crim. P. 5(d) requires the District Court Judge to inform the petitioner of:

(1)    the maximum penalties and any applicable mandatory minimum penalties:

(2)    the person's right to trial by jury and of the necessity of a demand for jury trial in accordance with these rules; and

(3)    (not applicable).

Reviewing the transcript of the proceedings, it is clear, as a matter of fact, that the court did not advise the petitioner that he was being charged with a "domestic" assault nor that his conviction would prohibit him from possessing firearms. Clearly, such disclosures are not required under the Maine Rules of Criminal Procedure nor do they invalidate, as a matter of law, the arraignment procedure whose fundamentals do not require a conviction to be vacated even if the arraignment is substantially defective, "unless the defendant can show prejudice, . . ." *State v. Mayberry*, 687 A.2d 966 (Me. 1997) (citing *State v. Kovtuschenko*, 576 A.2d 206, 207 (Me. 1990)). Further, an analysis of the case makes it clear that the court is under no obligation to inform a defendant of all the collateral consequences of a plea thereby rendering a plea in accordance with a plea agreement to be involuntary. *See LaFerriere v. State*, 697 A.2d 1301 (Me. 1997) and *Wellman v. State of Maine*, 588 A.2d 1178 (Me. 1991) (in the context of a Rule 11).

Finding then that the allegations as stated in Ground Two of the Petition is true to fact, it does not entitle the petitioner to relief as a matter of law and the respondent's motion to dismiss Ground Two must granted.[2]

---

[2] Because the court's final decision in this petition is founded upon his plea agreement, the court does not address the constitutional issues surrounding an offense known as a "domestic assault." The Legislature and the courts seem to be comfortable that all the implications of a simple misdemeanor assault created

Ground Three of the Petition complains that the plea was not knowingly made because he was not aware, through no fault on his part, that his plea and conviction would result in his losing his firearms. In the context of the respondent's motion to dismiss, the court considers the allegation to be true. This assertion triggers the collateral consequence rule which places no obligation on the State or the court to assure itself of the knowledge by a defendant of all the collateral consequences of a plea. The fundamental issue is whether the defendant knows the charges against him and his rights under our judicial system. The only requirement is that it be a "voluntary and intelligent plea of guilty." *State of Maine v. Huntley*, 676 A.2d 501 (Me. 1996). Further, the law appears to be well-established in the context of Ground Three of the Petition

by the domestic relationship do not raise any constitutional requirements on the part of the State to fully inform a defendant of the charges against him, or her. An assault is an assault unless it is a domestic assault. A domestic assault triggers a body of law in our Criminal Code with a number of requirements. There are special requirements relating to probation. 17-A M.R.S.A. § 1202(1-B). There are special definitions defining the victims of a crime. 17-A M.R.S.A. § 1171(2)(B). There are procedural requirements placed upon the prosecuting attorney in order to meet victim's rights. 15 M.R.S.A. § 6101(1)(B). There are procedural rights affected as to privileged communications. 16 M.R.S.A. § 53-B(10(B). There are enhanced law enforcement powers created. 17-A M.R.S.A. § 15(1)(A)(5-A). And, of course, the constitutional right to possess a firearm, including a firearm used for the purpose of hunting in the State of Maine if the assault is "domestic" and the result is "offensive physical contact" which "invariably emanate from the application of some quantum or physical force, that is, physical pressure exerted against a victim." *See U.S. v. Nason*, 269 F.3d 10 (1st Cir. 2001). The issue is not whether the law is proper or correct or sound public policy in protecting domestic partners from violence. The issue is whether a defendant is properly charged with a crime of "domestic" violence if it is not alleged in the charging instrument and it is not clearly indicated from the point of arraignment to final disposition that it is a particular category of assault that bears unique consequences under state and federal law. The cases repeat the maximum "ignorance of the law is no excuse." In this court's view, that does not equate to ignorance of the charge is no excuse because this court believes it is fundamentally and constitutionally required that a defendant, particularly a voluntarily pro se defendant, understand exactly the charge being brought against him. It would be argued that a defendant, once seeing the name of the victim on the charging instrument, would be well aware of the intimate domestic relationship. That is not the point. The real point is we have a new and special category of assault in the State of Maine called a "domestic assault" that is not defined in the Criminal Code, has consequences but not elements and requires an inference by an accused that somehow the relationship triggers special requirements under the law. The petitioner was charged with the crime of assault. Notwithstanding the notation on his summons, he was never charged with the crime of "domestic" assault. It is clear from all the circumstances that he was satisfied that there was an offensive touching. He was not aware, from any source, that he was admitting to that special category known as a "domestic" assault. Failure of the State of Maine law to properly create and categorize a crime of "domestic assault" has the effect as described by Chief Judge Posner of the United States Court of Appeals, 7th Circuit, in his dissent in *United States v. Wilson*, 159 F.3d 280: "In such circumstances the law is not a deterrent. It is a trap."

6

that knowledge of the defendant relate to the facts of the event and not a requirement that all the implications of the law be known by the pleading defendant. *See United States v. Mitchell,* 209 F.3d 319 (4th Cir. 2000). Under these circumstances, Ground Three must be dismissed per the respondent's motion. This leaves the court with the issue of due process as asserted in Ground One.[3]

The petitioner testified that he separated from his wife in accordance with divorce proceedings in 1999. He describes the incident on the date as charged as an accidental or reckless physical contact. He was arrested on the following day and posted bail, issued a summons for a court date on the charge of assault and threatening display of a dangerous weapon.[4] He appeared at the Augusta District Court at the date

---

[3] While the assertion that the State affirmatively misled the petitioner by giving inaccurate advice, the court examines the facts to determine whether there is evidence to support the finding of misrepresentation by the State or simply a misunderstanding of such substance that the petitioner is entitled to relief. The Fifth Amendment of the United States Constitution provides that an individual may not be "deprived of life, liberty, or property, without due process of law..." United States Constitution, Art. V. The Constitution also provides that in all criminal prosecutions, the defendant has a right "... to be informed of the nature and cause of the accusation..." U.S. Const., Amendment XI. Article I Fifth and Sixth of the Constitution of Maine provides that in all criminal prosecutions, the accused shall have a right "... To demand the nature and cause of the accusation, and to have a copy thereof; ..." Me. Const., Art. I, § 6. M.R. Crim. P. 3(a) provides that, "The complaint shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Our Law Court has said:

> A respondent in a criminal action has a constitutional right to be informed of the charge against him with that detail and particularity in pleading that apprises him of the offense for which he is charged. The State is not, however, in describing the subject of the larceny, held to a detail of such minute description that it falls within the category of an absurdity. When property is described in an indictment or information charging the offense of larceny, with that degree of sufficiency that its character, its nature and its kind, can be recognized by persons of common understanding, then it is adequate to acquaint a respondent with what he is charged with stealing.

*Anderson v. State of Maine,* 158 Me. 170, 180 A.2d 732 (1962). *See also United States v. Santana,* 70 F.3d 1253 (1st Cir. 1995); *see also United States v. Arboleda,* 929 F.2d 858 (1st Cir. 1991) and *United States v. Kelly,* 722 F.2d 873 (1st Cir. 1983): Quare: given all the implications of collateral consequences both under state and federal law, is there a creation of a special category of assault, "domestic assault," and a complaint not identifying its accusation as a "domestic assault" or even identifying the victim as one with a domestic relationship to the accused, an instrument containing "that degree of sufficiency that its character, its nature and its kind, can be recognized by persons of common understanding, that it is adequate to acquaint a respondent with what he is charged..." *Anderson v. State of Maine,* 158 Me. at 173, 180 A.2d at 734.

[4] Petitioner's exhibit no. 3 is the summons. It is a uniform summons and complaint containing all essential information including the words "domestic assault."

and time as summonsed expecting to plead not guilty and to obtain the services of an attorney. He described discussions with an ADA who first notified him that there were two charges. Petitioner testified that he told her he expected just one charge, the assault charge, for which he had been arrested, and asked her what was the nature of the second charge. He then became aware that he was accused of the improper use of a firearm as well as the "domestic charge." Complaining about these charges to the ADA, the petitioner says that she left the discussion representing that she was discussing it with another person of the District Attorney's office. Upon return, the petitioner then quotes the ADA as saying, "if you plead guilty to both charges, I will ask the court to impose a sentence of one year in jail, all suspended with probation, with a requirement for anger management and domestic abuse counseling." Petitioner states the ADA also made reference to prohibition on possession of firearms for three to five years.[5]

In any event, petitioner testified that he emphatically advised the ADA that he hunted in the State of Maine since he was 10 years old, that he had hunted in other states and the country of Canada, and that he regularly hunted with his son. On the basis of the suggestion that he would lose his right to a firearm, petitioner told the ADA that under no conditions he would accept that plea agreement, that under that condition he would go to trial. He stressed that it was absolutely essential to him that he not make any agreement that would result in his loss of his hunting firearms. The petitioner testified that the ADA left the negotiations for a few minutes and returned at which time she advised the petitioner that she had just talked with his wife and the State will be willing to drop the firearm charge with a "new deal." The State would recommend a one-year probation with anger management counseling. Petitioner further testified that he responded to the suggestion by explicitly stating to the ADA,

---

[5] It is unclear upon what basis such a representation was made, if made at all.

"You mean I can keep my guns?" He testified her response was, "That's the deal, that's it." At this point, the petitioner believes that by entering a plea of guilty to the simple class D assault charge he would be able to keep his firearms.

This discussion took place in the morning of November 7 and per agreement with the ADA, the defendant left the courthouse and returned for his arraignment at 1:00 p.m. In his appearance before the Judge of the District Court, there was no discussion with regard to firearms; the defendant did not ask, the court did not advise. Immediately after the arraignment, the petitioner met with his probation officer who says he advised him, "You will never be hunting again." The petitioner testified he advised the probation officer that that is not what he agreed to.

The petitioner agrees that he was never told by the ADA that he could not have his firearms but that it was his understanding under all of the circumstances, dismissal of the firearm count and the refusal to enter into a plea agreement with a firearm prohibition, that he could continue to have his hunting weapons. Petitioner also noted that the protective order governing the condition of probation did not have a specific prohibition of firearms.

The petitioner's testimony was preceded by the testimony of his probation officer who conducted the intake interview with the District Court immediately after the plea. He indicated he reviewed the conditions of probation with the petitioner and that hunting was discussed. The probation officer advised the condition prohibiting firearms as well as a written notice, admitted as an exhibit, of the federal law, 18 U.S.C. § 922(g)(9). The probation officer remembers that the petitioner acted very surprised and became quite upset and made it clear that he did not believe his plea would result in his loss of firearms.

9

In the interest of understanding the context of circumstances that existed at the time of this plea, inquiry was made by cross-examination of the probation officer of the position of the state agencies with respect to the federal firearm law. First, the history: the record indicates that this complaint was signed by the clerk of the District Court on January 11, 2000. The conviction upon plea and sentencing occurred on January 12, 2000. Provision of the federal law in question was an amendment by the United States Congress to the Gun Control Act of 1968 enacted on September 30, 1996, making it illegal for a person convicted of a misdemeanor of domestic violence to possess a firearm or ammunition. *See United States v. Mitchell*, 203 F.2d 319 (4th Cir. 2000). The notice provided by the probation officer to the petitioner stated that a person convicted of assault on a victim of the same household triggers a lifetime firearm prohibition with a five-year maximum penalty, without suspension or probation, in federal prison. The probation officer testified that because the ambiguity created by the language of the Maine assault law, i.e., the interpretation of "offensive physical contact," the Department of Corrections terminated use of the form subsequent to January of 2000.

Historically, the United States District Court for the District of Maine held in Portland in the matter of *United States v. Souther* held that the federal law did not apply, per se, to the Maine assault statute because it contemplated something other than violence. That decision was rendered on January 3, 2001. On February 13, 2001, the United States District Court held in Bangor in the matter of *United States v. Nason* determined that the Maine assault statute did per se apply to the federal firearm prohibition. This case was appealed to the United States Court of Appeals for the First Circuit which determined, in the matter of the same title, on October 19, 2001, that a person convicted of 17-A M.R.S.A. § 207(1) possessing a firearm would violate 18 U.S.C.

10

§ 922(g)(9). The probation officer conducting the intake of the petitioner then assigned him to another probation officer.

This officer testified that during this period of ambiguity of the application of the federal law to the Maine Criminal Code, the Department of Corrections had received notice from federal authorities, which notice, exhibit no. 2, was utilized to present to persons convicted of domestic assault as part of the intake process, including posting of the notice on the bulletin board in the District Court. These practices were discouraged by the prosecutors, theoretically, because it would discourage plea agreements on simple domestic assault cases. In any event, the practice of notice to the defendants was discontinued sometime after March of 2000.

Quite understandably, the ADA in question does not have an independent recollection of the transaction. In addition to the heavy workload of an ADA in the District Court, she commenced her term as an ADA in December 1999 and worked the Augusta District Court as a Domestic Violence Prosecutor. January 12, 2000, was her first or second arraignment day which she attended assisting the regular and experienced ADA. Her practice was to go to the lobby of the District Court and to announce that she was the ADA and that anyone who wanted to talk with her about their case was invited to do so. Respondent's exhibit no 1, is a written plea offer of the prosecuting attorney entitled "Plea Agreement." Curiously, it is entitled "State of Maine v. Beth Bailey," the victim. The exhibit states:

> After reviewing the above case, the State will offer your client the following plea disposition. Dismiss firearm threatening matter, plea to assault, 364/0, one year probation, conditions of probation, comply w/prot., no contact direct/indirect with B. Bailey, (undecipherable), vicinity residence, anger management counseling.

The exhibit further provided that the plea offer was to expire on January 12, 2000. The offer is dated January 12, 2000. The ADA makes it clear that she would never have

11

represented to the petitioner that he could have his firearms especially since she was aware of the condition of probation printed on the form. While she does not recall the conversation, she does indicate that she was aware of the Federal Firearms Law but her office was not sure whether the Federal Firearms Law would apply in these Maine cases. She further advised that as the domestic assault prosecutor, the prosecution records were kept separately and other administrative matters were not intermingled with the normal misdemeanor prosecution. She admitted that the cases were treated differently, particularly with conditions of sentencing.

A regional supervisor of the Office of Probation and Parole testified as to the use in the field of the forms provided by the Department Justice and that a relationship on the issue had been developed with the United States Attorney's Office. He testified that as of March 21, 2001, the use of the form ended and the Office of Probation and Parole stayed away from the issue. He made particular note of the domestic violence statute in 17-A M.R.S.A. § 1202(1-B). Finally, he testified that he met with the District Attorney for Kennebec County on the issue and advised of the practice of notification of the federal law. The witness declined to attribute a specific policy to the District Attorney but his office was left with the impression as deemed from the probation officer's staff that the prosecutors opposed the practice particularly where the issue had not been finally and firmly decided.

Obviously, the import of the presentation by the petitioner of this evidence is to suggest that the Office of the District Attorney was motivated to mislead a defendant, such as the petitioner, in concealing the implication of any federal firearms prohibition so as to encourage plea agreements on domestic assault cases. While that may be a reasonable inference, there certainly is sufficient evidence to establish that the motivation of the prosecutors to veer from this subject could as well be motivated not to

12

mislead criminal defendants in what was an unsettled issue at the time in question. The court is then left with a situation where a defendant asked a prosecutor, "Can I keep my firearm?" to which the response is, "This is the deal, that's it." Is this a specific representation by the prosecutor that the defendant may keep his firearm? Is a specific misrepresentation made by the prosecutor? Does the prosecutor have a duty to specifically respond to the question of the status of the federal law? The law does not seem to require an affirmative answer to those questions. Knowing there was a federal law prohibiting firearm possession that <u>might</u> be construed to significantly affect the right of a firearm of a convicted domestic assault defendant, should the ADA have advised the petitioner that there was a <u>possibility</u> that the federal law might apply? To so hold it could open the door to a myriad of responsibilities beyond the scope of an ADA and her duty to those accused of a crime.

The court views this particular instance differently. The petitioner specifically placed on the table a question of fact which played in his plea agreement. While petitioner's expectation was concerning a matter collateral to the sentence, not caused by any misrepresentations by the State, it was clearly a part of his plea agreement. Under all of the circumstances of the negotiations, the State was aware that it was a part of the plea agreement. *See Wellman v. State of Maine*, 588 A.2d 1178, 1180 at ¶ 4. The respondent argues that there is no certainty that the petitioner's conviction on his plea will result in the imposition of the Federal Firearm Law. The State understands that the Untied States Department of Justice has not been prosecuting such cases where the assault conviction resulted from an unrepresented plea without waiver of counsel. In the present case the record is unclear. The court, "Do you understand you have a right to have a lawyer?" The response in the electronic record was inaudible. Nevertheless, the court proceeded with the explanation of rights at arraignment which could be

13

inferred that the defendant had answered in the affirmative and impliedly wished to proceed without counsel. Whether there is certainty of the prosecution of the defendant for possession of his hunting firearms by the federal government under section 922, and notwithstanding the settlement of the question one year after his plea, it is abundantly clear that his plea was generated by an understanding that no jeopardy would lie as to his right to possess firearms and, accordingly, his plea was not voluntarily and intellectually made.

Accordingly, the entry will be:

Petitioner's petition to set aside his plea of guilty to count I, assault, and return the case to the trial list is GRANTED; the matter REMANDED to the District Court.

Dated: July 2⁸ , 2003

Donald H. Marden
Justice, Superior Court

14

EDWIN S BAILEY
   vs
STATE OF MAINE

SUPERIOR COURT
KENNEBEC, ss.
Docket No   AUGSC-CR-2001-00036

## DOCKET RECORD

PL. DOB: 01/19/1962
PL. ATTY: ROBERT SANDY
          SHERMAN & SANDY
          74 SILVER ST
          PO BOX 499
          WATERVILLE ME 04903-0499
          RETAINED 01/10/2001

State's Attorney: DAVID CROOK

Filing Document: PETITION
Filing Date: 01/10/2001

Major Case Type: POST CONVICTION REVIEW

## Charge(s)

## Docket Events:

02/06/2001 FILING DOCUMENT -  PETITION FILED ON 01/10/2001

02/06/2001 POST CONVIC. REVIEW -  REVIEW SENT FOR REVIEW ON 02/06/2001

           SENT TO JUSTICE STUDSTRUP (LANCE) FOR REVIEW.
02/06/2001 ATTORNEY -  RETAINED ENTERED ON 01/10/2001

           Attorney:  ROBERT SANDY
03/07/2001 POST CONVIC. REVIEW -  ASSIGNMENT ASSIGNED TO DOCKET ON 03/02/2001
           S KIRK STUDSTRUP , JUSTICE
           CASE ASSIGNED TO THE REGULAR CRIMINAL DOCKET; TIME LIMITS ESTABLISHED.    COPY TO COUNSEL
03/26/2001 POST CONVIC. REVIEW -  RESPONSE TO PETITION FILED ON 03/23/2001

03/26/2001 MOTION -  MOTION TO DISMISS FILED BY STATE ON 03/23/2001

             TO DISMISS GROUNDS 2 AND 3 OF THE PETITION
04/18/2001 OTHER FILING -  TRANSCRIPT ORDER FILED ON 04/18/2001

           DA:  PAUL RUCHA
           COPY TO ELECTRONIC RECORDING- REQUEST FOR TRANSCRIPT OF ARRAIGNMENT, PLEA AND SENTENCING
05/10/2001 OTHER FILING -  OTHER DOCUMENT FILED ON 05/09/2001

           PETITIONERS STATEMENT OF WITNESSES AND EXPECTED TESTIMONY.
04/19/2002 MOTION -  MOTION TO DISMISS FILED BY STATE ON 04/11/2002

04/26/2002 POST CONVIC. REVIEW -  PCR CONFERENCE SCHEDULED FOR 04/01/2002

04/26/2002 POST CONVIC. REVIEW -  PCR CONFERENCE HELD ON 04/01/2002
           JOHN R ATWOOD , JUSTICE
           Attorney:  ROBERT SANDY
           DA:  PAUL RUCHA
04/26/2002 POST CONVIC. REVIEW -  ORDER RESULTING FROM PCR CONF FILED ON 04/01/2002

           1/2 DAY FOR HEARING - RESPONDENT HAS A MOTION TO DISMISS AND WILL SUPPLEMENT THIS MOTION
           BY APRIL 12 WITH CURRENT REFERENCE TO CURRENT FEDERAL LW. PETITIONER TO REPLY BY MAY 10.

Printed on: 07/29/2003

07/16/2002 OTHER FILING - OTHER DOCUMENT FILED ON 04/11/2002

DA: PAUL RUCHA
RESPONDENTS SUPPLEMENT TO MOTION TO DISMISS THE PETITION FOR POST CONVICTION REVIEW
07/16/2002 OTHER FILING - OTHER DOCUMENT FILED ON 05/09/2002

PETITIONER'S STATEMENT OF WITNESSES AND EXPECTED TESTIMONY
09/03/2002 MOTION - MOTION TO CONTINUE FILED BY STATE ON 08/30/2002

FILED BY STATE, MARTHA SWIFT IS AN ESSENTIAL WITNESS IN THIS CASE AND IS UNAVAILABLE ON
SEPTEMBER 5, 2002, OPPOSING ATTORNEY DOES NOT OBJECT TO THIS CONTINUANCE.
09/04/2002 OTHER FILING - TRANSCRIPT FILED ON 09/03/2002

TRANSCRIPT OF ARRAIGNMENT AND PLEA HELD IN DISTRICT COURT (DOCKET #CR-99-3823) BEFORE
JUDGE FRENCH ON JANUARY 12, 2000.
12/31/2002 OTHER FILING - OTHER DOCUMENT FILED ON 12/30/2002

Attorney: ROBERT SANDY
PETITIONER'S REPLY TO RESPONDENT'S MOTION TO DISMISS GROUNDS 2 AND 3 OF THE PETITION FOR
POST-CONVICTION REVIEW
01/29/2003 HEARING - EVIDENTIARY HEARING HELD ON 01/06/2003
DONALD H MARDEN , JUSTICE
Attorney: ROBERT SANDY
DA: PAUL RUCHA          Reporter: JANETTE COOK
Defendant Present in Court

CASE NEEDS TO BE RESCHEDULED FOR ARGUMENT ON THE EVIDENTIARY HEARING   MOTION TO
DISMISS COUNTS 2 AND 3 HEARD AT TIME OF EVIDENTIARY HEARING      JUSTICE MARDEN TO ISSUE
AN ORDER.
01/29/2003 MOTION - MOTION TO DISMISS UNDER ADVISEMENT ON 01/09/2003

02/28/2003 HEARING - ORAL ARGUMENT SCHEDULED FOR 03/31/2003 @ 8:30

NOTICE TO PARTIES/COUNSEL
02/28/2003 HEARING - ORAL ARGUMENT NOTICE SENT ON 02/28/2003

07/29/2003 MOTION - MOTION TO DISMISS GRANTED ON 07/28/2003
DONALD H MARDEN , JUSTICE
COPY TO PARTIES/COUNSEL                                            GROUND 2
DISMISSED
07/29/2003 HEARING - ORAL ARGUMENT HELD ON 03/31/2003
DONALD H MARDEN , JUSTICE
Attorney: ROBERT SANDY
DA: PAUL RUCHA          Reporter: PHILIP GALUCKI
07/29/2003 POST CONVIC. REVIEW - PCR DETERMINATION UNDER ADVISEMENT ON 03/31/2003
DONALD H MARDEN , JUSTICE
07/29/2003 ORDER - COURT ORDER FILED ON 07/28/2003
DONALD H MARDEN , JUSTICE
PETITIONER'S PETITION TO SET ASIDE HIS PLEA OF GUILTY TO COUNT 1,ASSAULT,  AND RETURN THE
CASE TO THE TRIAL LIST IS GRANTED, THE MATTER REMANDED TO   THE DISTRICT COURT.

COPIES MAILED TO COUNSEL AND TO AUGUSTA DISTRICT COURT
07/29/2003 FINDING - GRANTED ENTERED BY COURT ON 07/28/2003

            DONALD H MARDEN , JUSTICE
07/29/2003 MOTION -  MOTION TO CONTINUE GRANTED ON 09/03/2002
            DONALD H MARDEN , JUSTICE
            COPY TO PARTIES/COUNSEL
07/29/2003 MOTION -  MOTION TO DISMISS GRANTED ON 07/28/2003
            DONALD H MARDEN , JUSTICE
            COPY TO PARTIES/COUNSEL                              GROUND 2
            DISMISSED

A TRUE COPY
ATTEST:     _____
                         Clerk